CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 04 2015
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONNA CAROL LANDEL, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SMYTH COUNTY ) <br> COMMUNITY HOSPITAL, et. al, ) <br> ) <br> Defendants. ) | Civil Action No. 7:15CV00164 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

This case is presently before the court on a motion to dismiss for lack of subject matter jurisdiction filed by Defendants Appalachian Emergency Physicians ("AEP") and Robert Rowley Bowman, Jr., M.D. ("Dr. Bowman"). For the reasons that follow, the court will deny that motion.

### Factual and Procedural Background

The following facts, taken from the complaint, are accepted as true at this stage in the proceedings. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Lucas v. Henrico County Sch. Bd., 822 F.Supp.2d 589, 599 (E.D. Va. 2001).

Kolby Krystyna Debord, a twenty-seven year old uninsured woman, presented to the emergency room ("ER") of Defendant Smyth County Community Hospital (the "Hospital") on November 25, 2014. See Compl. ¶¶ 3, 6. At that time, Debord "met the screening criteria for the diagnosis of sepsis," including having a documented infection, an elevated white blood cell count, and an elevated heart rate. Id. ¶ 6. She also presented the "classic" symptoms of meningitis, including a headache, stiff neck, and altered mental status. Id. ¶ 8. Debord also had

very low sodium levels consistent with severe hyponatremia, an emergency medical condition that can result in brain damage or death. Id. ¶ 9.

Despite Debord's serious condition, she spent only 4 hours and 8 minutes in the ER. Id. ¶ 10. The Hospital failed to properly screen for emergency medical conditions prior to her discharge. Id. During her ER visit, Defendant Dr. Bowman ordered two blood cultures to be analyzed for bacteremia "STAT," which suggests that he suspected that Debord could have a bloodstream infection that might lead to sepsis and systemic inflammatory response syndrome. Id. ¶ 11. Dr. Bowman also requested Debord's permission to perform a lumbar puncture to confirm or exclude a diagnosis of meningitis; however, Debord refused to submit to this test. Id. ¶ 8. According to the complaint, "a significant number of Emergency Department patients decline to have a lumbar puncture when meningitis is suspected," and those patients should instead be "hospitalized and given intravenous antibiotics for an extended period of time." Id.

At 7:28 p.m. on November 26, 2014, less than 24 hours after Debord's discharge, Defendant Linda Milanese, a Hospital laboratory employee, received a report that Debord's blood culture was positive for a staph infection. Id. ¶ 12. Milanese failed, however, to immediately report this result to the ER. Id. ¶ 12. The following morning at 7:53 a.m., Defendant Donald Taylor, R.N., received a phone call informing him that Debord had tested positive for a staph infection. Id. ¶ 13. Nurse Taylor wrote in Debord's record that a "positive blood culture [was] verbally given to [him] by K. Fletcher, R.N., [patient] had received IV Rocephin and [was] sent home with oral antibiotics, sensitivity pending." Id. According to the complaint, Taylor "unlawfully and incorrectly decided that the treatment plan for [] Debord was adequate and that nothing else needed to be done," instead of reporting the result to the

2

ER doctor, who "would have known that oral antibiotics… [were] not the correct treatment for a bloodstream infection…" Id. No one contacted Debord to tell her about the positive test results. Id. ¶ 14.

Debord's illness grew progressively worse until December 12, 2014, when she returned to the Hospital's ER. Id. Shortly after Debord arrived at the Hospital, she suffered a septic emboli, which caused a stroke paralyzing half of her body. Id. Debord was transferred to Johnson City Medical Center in Johnson City, Tennessee, where her condition progressively deteriorated until her death on March 12, 2015. Id. According to the complaint, Debord's death resulted from the subpar medical screenings and medical care that she received because she was uninsured. Id.

Donna Carol Landel and The Nature Boy Buddy Landel, Debord's parents and co-administrators of her estate, filed this wrongful death action on April 10, 2015 against six defendants, including the Hospital, Mountain State Health Alliance (MSHA"), AEP, Dr. Bowman, Milanese, and Nurse Taylor, asserting various state and federal claims related to the defendants' alleged failure to properly diagnose and/or treat Debord. The complaint seeks compensatory damages in the amount of $10 million and punitive damages in the amount of $350,000. Following Mr. Landel's death, the caption of this action was amended to name Ms. Landel as the sole plaintiff.

The defendants filed several motions to dismiss, which were argued on June 16, 2015. By order entered that date, the court dismissed the plaintiff's claim for breach of fiduciary duty and took under advisement the defendants' motions to dismiss the plaintiff's claim for punitive damages. See Docket No. 45. The court reserved its decision on the Rule 12(b)(1) motion to

3

dismiss for lack of subject matter jurisdiction filed by Dr. Bowman and AEP. Id. That motion is the subject of this memorandum opinion.

## Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of claims over which the court lacks subject matter jurisdiction. The plaintiff bears the burden of showing that the court has jurisdiction over her claim. See Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 371 (4th Cir. 2012). In this case, the defendants have essentially "attack[ed] the… complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction [should] lie." Lucas, 822 F.Supp.2d at 599 (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In such a challenge, a court assumes the truth of the facts alleged by [the] plaintiff, thereby functionally affording the plaintiff the same procedural protection…she would receive under Rule 12(b)(6) consideration." Id.

## Discussion

Federal courts are "courts of limited jurisdiction," which "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as over all civil actions where the controversy arises between citizens of different states and exceeds the sum or value of $75,000. Id. § 1332. "Section 1332 requires complete diversity among the parties, meaning that the citizenship of each plaintiff must be different from the citizenship of each defendant." Hoschar v. Appalachian Power Co., 739 F.3d 163, 170 (4th Cir. 2014). District courts are also authorized to exercise "supplemental" jurisdiction over "all

4

other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court can exercise supplemental jurisdiction over such claims even when those claims involve "pendant parties" who would not otherwise be subject to the court's jurisdiction. Id.

Here, the court has original jurisdiction over Count I of the complaint, which alleges that the Hospital and MSHA violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, a federal statute which mandates that hospitals provide appropriate screening examinations to all patients, irrespective of their insurance status, and stabilize any emergency medical conditions revealed by those screenings before transferring or discharging a patient. See Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139, 142 (4th Cir. 1996). The court does not, however, have original jurisdiction over the state-law claims alleged in the complaint against AEP and Dr. Bowman, because the parties are not diverse. The court's jurisdiction over those claims is instead premised on supplemental jurisdiction, because they arise from "the same case or controversy" as the EMTALA claim – namely, the defendants' alleged failure to properly diagnose and treat Debord.

AEP and Dr. Bowman assert that the court should decline to exercise supplemental jurisdiction in this case. Federal courts have "limited discretion in declining to exercise supplemental jurisdiction." Robertson v. Crown Auto, Inc., No. 4:04CV00043, 2006 WL 681000, at *1 (W.D. Va. Mar. 14, 2006). Section 1367(c) provides that a federal district court

> may decline to exercise supplemental jurisdiction… if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

5

28 U.S.C. § 1367(c). Courts should consider "judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together" when deciding whether or not to exercise supplemental jurisdiction over pendant claims and parties in a particular case. Jones v. Garcia, 936 F.Supp. 929, 930 (M.D. Fla. 1996).

AEP and Dr. Bowman argue that the complaint's state-law claims will predominate over the EMTALA claim. Although the EMTALA claim and the medical malpractice claims arise from the same events, the defendants insist that those claims involve different legal and factual questions: the state law medical malpractice claims require analysis of whether Dr. Bowman or others breached the standard of care in diagnosing and treating Debord, and whether those breaches proximately caused Debord's injury and death. On the other hand, the EMTALA claim is concerned only with whether Debord initially received appropriate medical screening and stabilization in the ER. See Keitz v. Virginia, No. 3:11-CV-00061, 2011 WL 4737080, at *3-5 (W.D. Va. Oct. 5, 2011) (Conrad, J.) ("[T]he correctness of the UVA ER's diagnosis [and subsequent treatment] as a result of the screening process is irrelevant for purposes of the alleged EMTALA violations. That is a subject for a state law malpractice claim."). If the court does not decline to exercise supplemental jurisdiction in such a situation, the defendants argue, any allegation of medical malpractice in an ER could give rise to a federal lawsuit, which was not Congress's intent in passing the EMTALA. See Power v. Arlington Hosp. Ass'n, 42 F.3d 851, 864 (4th Cir. 1994) ("EMTALA was not intended to displace state malpractice law.").

6

In response, the plaintiff insists that, if the court declines to exercise supplemental jurisdiction here, they will be forced to litigate their claims in two separate forums – the EMTALA claim in federal court and the medical malpractice claims in state court. The plaintiff thus argues that the court should exercise supplemental jurisdiction to further "the principles of economy, convenience, fairness, and comity which underlie the pendant jurisdiction doctrine." City of Chicago v. Internat'l Coll. of Surgeons, 552 U.S. 156, 172-73 (1997). As the defendants correctly note, the plaintiff's concern is unwarranted. Should the court decline to exercise supplemental jurisdiction here, the plaintiff could simply refile all of her claims in state court. "State courts are regularly presented with questions of federal law and federal policy," like the plaintiff's EMTALA claim, and they are "fully capable of deciding questions of this sort." Alder v. Am. Standard Corp., 538 F.Supp. 572, 578 (D. Md. 1982) (citing Maine v. Thiboutot, 448 U.S. 1, 10-11 (1980)).

Nonetheless, the court believes exercising supplemental jurisdiction is appropriate here. There is no doubt that the plaintiff's state law claims are borne of the same set of facts as her federal claim. The medical malpractice claims alleged by the plaintiff do not present novel or complex questions of Virginia law. See Lane v. Calhoun-Liberty County Hosp. Ass'n, 846 F.Supp. 1543 (N.D. Fla. 1994) (in case presenting EMTALA and state law medical malpractice claims, declining to exercise supplemental jurisdiction over state law claims because those claims presented novel issues of Florida law not yet addressed by Florida state courts). This court has considered claims of this sort on many prior occasions. Moreover, the court does not believe that the state law claims will necessarily predominate over the federal claim alleged here, as they "are two entirely separate types of claims." Jones, 936 F.Supp. at

7

931 (declining to remand state law medical malpractice claims after defendants removed case to federal court based on EMTALA claim); see also Nelson v. Calvin, No. 01-2021, 2001 WL 789396, *2 (D. Kansas July 9, 2001) (exercising supplemental jurisdiction over related state law claims in EMTALA case); Sorrells v. Babcock, 733 F.Supp. 1189 (N.D. Ill. 1990) (same).

"[T]he doctrine of pendent jurisdiction [] is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). In this case, the court concludes that those values are best served by exercising supplemental jurisdiction over the plaintiff's state law claims.

## Conclusion

For the reasons stated, the court will deny the defendant's motion to dismiss. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 4th day of August, 2015.

_____
Chief United States District Judge

8